STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 21-2-13 Vtec |
| WhistlePig, LLC Act 250 JO (#9-070) | DECISION ON MOTIONS |

**Decision on WhistlePig's Motion to Reconsider and the
Natural Resources Board's Motion to Dismiss**

This matter relates to Act 250 Jurisdictional Opinion #9-070 issued February 8, 2013 ("the JO") in which the District 9 Environmental Commission Coordinator ("District Coordinator") determined that WhistlePig, LLC's proposed "farm-based" distillery in Shoreham, Vermont, would be subject to Act 250 jurisdiction. WhistlePig appealed the JO, and on April 11, 2014 this Court decided cross-motions for summary judgment regarding whether a proposed still that would distill rye whiskey using rye grain grown solely on the WhistlePig farm would be exempt from Act 250 jurisdiction under the farming exemption. In re WhistlePig, LLC Act 250 JO, No 21-2-13 Vtec, slip op. (Vt. Super. Ct. Envtl. Div. Apr. 11, 2014) (Durkin, J.). The Court denied both motions, finding that material facts were either disputed or not presented with sufficient clarity for the Court to find for either party as a matter of law, but clarified our interpretation of the governing legal standards.

WhistlePig now asks the Court to reconsider those legal determinations. Neighboring property owners George Gross and Barbara Wilson d/b/a Solar Haven Farm ("Solar Haven Farm") oppose the motion to reconsider, as does the Vermont Natural Resources Board ("NRB"). The NRB has also moved to dismiss the entire matter, arguing that the appeal is no longer ripe for review. In response to the motion to reconsider, Solar Haven Farm also requests a final ruling from the Court regarding Act 250 jurisdiction over WhistlePig's development.

I.      **WhistlePig's Motion to Reconsider**

In response to the cross-motions for summary judgment in this matter, the Court was tasked with determining what constitutes an agricultural product principally produced on a

1

farm sufficient to exempt the on-site storage, preparation, and sale of that product from Act 250 jurisdiction. The construction of improvements for "farming" is excluded from the definition of development and therefore from Act 250 jurisdiction. 10 V.S.A. § 6001(3)(D). Farming is defined as including "the on-site storage, preparation and sale of agricultural products principally produced on the farm." 10 V.S.A. § 6001(22)(E). Neither the term "agricultural product" nor "principally produced" are defined within the statute.

WhistlePig sought a determination that the production and storage of the whiskey would be exempt from Act 250 jurisdiction because it qualified as an agricultural product principally produced on the farm. Neighboring property owners George Gross and Barbara Wilson d/b/a Solar Haven Farm ("Solar Haven Farm") argued that the production and storage of whiskey are not exempt from Act 250 jurisdiction because the majority of materials or ingredients that went into the production of the whiskey were not produced on the farm and therefore the farming exemption did not apply.

The Court applied the Natural Resources Board Act 250 Rules definition of "principally produced on the farm" in determining whether or not WhistlePig qualified for the farming exemption. Pursuant to the version of the Rule then in effect, an agricultural product is "principally produced" on the farm if "more than 50% (either by volume or weight) of the ingredients or materials contributing to [the] final agricultural product which results from the activities stated in 10 V.S.A. § 6001(22)(A) - (D),[1] and which is stored, prepared or sold at the farm, is grown or produced on the farm." Natural Resources Board Act 250 Rules, Rule 2(C)(19), Code of Vt. Rules 12 004 060, available at http://www.lexisnexis.com/hottopics/ codeofvtrules ("Rule 2(C)(19)" or "the Rule"). This definition was adopted effective October 1, 2013.

WhistlePig now requests that the Court reconsider and alter our decision on the motions for summary judgment, arguing that this definition of "principally produced on the farm" was an improper substantive change in the regulatory definition of the farming

---

[1] "'Farming' means: (A) the cultivation or other use of land for growing food, fiber, Christmas trees, maple sap, or horticultural and orchard crops; or (B) the raising, feeding, or management of livestock, poultry, fish, or bees; or (C) the operation of greenhouses; or (D) the production of maple syrup . . . ." 10 V.S.A. § 6001(22)(A)–(D).

exemption. WhistlePig argues that the NRB's 2013 change to the Rule, made effective after WhistlePig had filed its summary judgment motion on September 30, 2013, not only altered the legal standards without any change in the statutory language the Rule implements, it is also contrary to precedent established by the former Environmental Board in Re: Scott Farm, Inc., Declaratory Ruling No. 413, Findings of Fact, Conclusions of Law, and Order (Vt. Envtl. Bd. Jan. 16, 2003). WhistlePig therefore asks the Court to apply the prior version of the Rule, as interpreted by the Environmental Board, and suggests that doing so requires alteration of the Court's legal analysis in its decision on the motions for summary judgment.

Solar Haven Farm and the NRB both oppose the motion. They argue that the change in language of the Rule, as adopted in 2013, did not alter the legal standards for the application of the Act 250 farming exemption, and that regardless, the Court should reach the same legal conclusions under either iteration of the Rule and the Scott Farm decision.

The language of the Rule prior to the 2013 amendment read: "For purposes of 10 V.S.A. § 6001(22)(E), '*principally produced*' means that more than 50% (by volume or weight) of the agricultural products, which result from the activities stated in 10 V.S.A. § 6001(22)(A) – (D) and which are stored, prepared or sold at the farm, are grown or produced on the farm." This language was meant to implement the 2003 decision of the Environmental Board in Scott Farm interpreting § 6002(22)(E). In Scott Farm, the Board considered whether a farm-based culinary school was exempt from Act 250 as "farming." The Board, in considering a hypothetical apple pie produced at the culinary school, answered the question of whether the majority of the apples needed to come from the farm or the majority "of all the ingredients in an apple pie." Scott Farm, at 8. The Board determined "that the 'principally produced' requirement can be satisfied if the majority of the weight or volume of the ingredients in the finished product comes from Scott Farm. Thus, even if the primary ingredient in the finished product does not come from Scott Farm, as long as most of the ingredients do, the product, and, more importantly for purposes of this case, the process by which it is made, fits the 'farming' exemption of the statute." Id. 8–9 (emphasis in original). Thus, the board held that all ingredients must be considered. WhistlePig asserts that the Scott Farm decision places the focus on the "final product" and that the 2013 version of the Rule conflicts with this standard

3

because it allows for consideration of ingredients or materials that "contribute" to the final product but are not present in the finished product. Without a change to the statutory language the Rule is intended to clarify, WhistlePig argues that the new Rule's departure from Scott Farm is improper.

As noted in the April 11, 2014 decision on motions for summary judgment, while that decision was based in part on the plain language of the 2013 Rule, it was also based on a common sense interpretation of § 6001(22)(E) and, although not referenced there, a common sense interpretation of the Scott Farm precedent:

> In reaching th[e conclusion that all ingredients must be considered], we specifically reject WhistlePig's assertion that only the "ingredients remaining in the final product" should be relevant because it is unsupported by the plain meaning of the words that the drafters used. Perhaps even more compelling, however, is the abject confusion that would result, should we adopt WhistlePig's assertion. Were we to conclude that only the ingredients remaining in the final product are relevant to an analysis of whether it is an "agricultural product principally produced on the farm," we would be condemning every applicant, every neighbor of a project, every district commission coordinator, and every judge assigned to the Environmental Division to embark on a complex analysis of the "ingredients" remaining in a final product asserted to be principally produced on a farm and therefore exempt from Act 250 review. In fact, since the recipe and process used to make rye whiskey, or split pea soup for that matter, can vary from one chef to another, WhistlePig's assertion would require a detailed analysis of each "ingredient" remaining in every product asserted to be "agricultural" in nature, thereby rendering Act 250 jurisdictional determinations unmanageable. We decline to adopt such a convoluted, unsupported manner of computation.

In re WhistlePig, LLC Act 250 JO, No 21-2-13 Vtec, slip op. at 8 (Vt. Super. Ct. Envtl. Div. Apr. 11, 2014) (Durkin, J.) (emphasis added). We have again revisited the Board's Scott Farm decision and find no support for WhistlePig's current assertion that only the ingredients remaining in the finished product should be considered. In fact, in an effort to clarify its reasoning, the Scott Farm Board identified the ingredients in a hypothetical batch of "apple-pear jelly[, which] is comprised of 40% sugar, 30% Scott Farm apples, and 30% Scott Farm pears by weight or volume . . .." Id. at 9. In making this comparison of ingredients, the Scott Farm Board never suggests an analysis of what (by weight or volume) of those ingredients remained in the final jam. In fact, the Board's recitation of ingredients suggests that the Board members knew what

ingredients were needed to begin the process of producing apple-pear jelly; not what ingredients were left when the process was completed. The language of the 2007 Rule, while appearing un-artful with the benefit of this controversy, appears to have been chosen to support this summary of the Scott Farm holding. Thus, we find no support propounded by WhistlePig for the interpretation of either the Scott Farm precedent or the prior Rule.

We also again conclude that to adopt WhistlePig's argument would require a complex chemical analysis of the finished product in order to determine whether or not that product is "agricultural." This standard is unworkable and we cannot read either the pre-2013 version of the Rule or the Scott Farm decision to mandate such an approach. Although the Board in Scott Farm references "ingredients in the finished product," the Court's interpretation of "ingredients" in our prior decision still includes all ingredients that contribute to the final product and not only those ingredients "remaining" in the final product. The Scott Farm Board did not suggest the complex and uncertain exercise of investigating what ingredients are "left" once an apple pie is baked, and we cannot adopt WhistlePig's assertion here that we must condemn District Environmental Coordinators to engage is such an exercise for each future assertion of an agricultural exemption.

Here, the ingredient grown or produced on the farm is rye grain. Yet, there is no rye grain in the resulting rye whiskey; rather, all that is left after the chemical processes is ethanol that is derived from the grain itself.[2] Regardless, it is the rye that is the focus of the agricultural exemption. It is the purpose of the exemption to allow for use of ingredients grown on the farm to create value added products. The plain language of the statute makes clear that the determining factor in defining an "agricultural product" is what ingredients come directly from the farm. For this reason, the focus is not on the value added product, but rather all the ingredients that go into the creation of that product. This makes sense when one contemplates that the creation of those value added products will almost always result in the alteration of the character of the farm raised ingredients, sometimes so much so that the raw ingredients are no

---

[2] As noted in our decision on motions for summary judgment, the process of distilling rye whiskey is generally undisputed. Rye grain is converted to glucose in a mixture of enzymes and water. Yeast is used to convert the glucose into ethanol in a solution that is primarily water. Much of this water is evaporated through the distilling process and the result is a mixture that is primarily ethanol and commonly referred to as "new whiskey." Water is added and the mixture is then aged in barrels where additional water and ethanol evaporate.

5

longer present in any recognizable form in the product itself. To focus solely on the chemical makeup of the whiskey, or an apple pie, or apple-pear jelly for that matter, would be to focus on this transformation at the expense of the rye grain, apples, or pears, themselves. Not only does this additional step emphasize the final value added product over the farm raised ingredients, but it is unwarranted and contrary to the simple and straightforward approach the Board obviously intended in the Scott Farm decision.

Rather, in determining whether a value-added product is "agricultural," one must look at all of the ingredients that go into the product and determine whether 51% of those ingredients come from the farm. This is the clear import of the Scott Farm decision and the words chosen by the Legislature in authorizing the Board to implement its Rules. The change from the pre-2013 Rule and the current Rule only makes this legal point more clear; we conclude that, at least for the legal analysis in this case, the Rule revision did not change the substance of the "principally produced" definition.

For all of these reasons, while we have reconsidered our legal determinations we **DENY** WhistlePig's request that this Court alter those determinations in any way.

## II.     NRB's Motion to Dismiss

The NRB, in response to the motion to reconsider, has moved to dismiss the JO appeal as unripe. Within the context of the related Act 250 proceedings for WhistlePig's bottling line, still, offices, and related infrastructure, WhistlePig has represented that there are no current plans to create an additional still on its Shoreham farm. As we noted in our Decision on motions for summary judgment, a jurisdictional opinion is, by its nature, somewhat advisory. "A request for a jurisdictional opinion is a unique procedure, since it in effect is a statutory authorization for a district coordinator, and this Court on appeal, to render an advisory opinion as to whether a proposed development requires a state land use permit." In re WhistlePig, LLC Act 250 JO, No 21-2-13 Vtec, slip op. at 11 (Vt. Super. Ct. Envtl. Div. Apr. 11, 2014) (Durkin, J.); see 10 V.S.A. § 6007(c). While WhistlePig may not have any current plans for the construction of an additional still on its farm, we know of no statutory restriction on its ability to seek a jurisdictional opinion regarding the scope of Act 250 jurisdiction over its future activities.

6

It is not disputed that WhistlePig is growing and will continue to grow rye grain on its farm. Nor is it disputed that WhistlePig proposes to convert that rye grain to whiskey for sale. Whether or not that process qualifies as a farming procedure that is exempt from Act 250 jurisdiction remains an issue that the District Coordinator, the NRB, or this Court on appeal may consider pursuant to the procedures for jurisdictional opinions. We therefore conclude that the NRB's motion to dismiss must be **DENIED**.

## III.     Solar Haven Farm's Request for Final Ruling

We finally note that in response to the motion to reconsider, Solar Haven Farm also "requested" a final ruling as to Act 250 jurisdiction over WhistlePig's operation. Solar Haven Farm suggests that in the period of time since the decision on motions for summary judgment, WhistlePig has shared with Solar Haven Farm all of the ingredients that go into the production of the whiskey and that it is undisputed that rye grain makes up less than 51% by weight or volume of those ingredients. If this is the case, given the Court's affirmance of our prior legal determinations, it may well be that no facts are in dispute and Solar Haven Farm is entitled to judgment that WhistlePig's distillation of whiskey requires an Act 250 permit, even where all grain used in the distillation process comes from the WhistlePig farm. We cannot, however, accept as undisputed the facts presented by Solar Haven Farm, absent compliance with Vermont Rule of Civil Procedure ("V.R.C.P.") 56. That is, Solar Haven Farm must present the facts it alleges to be undisputed, by way of supporting affidavits or other documentation, and WhistlePig must have an opportunity to respond to those facts. See V.R.C.P. 56(c) (setting out summary judgment procedures). Thus, to the extent Solar Haven Farm's "request" is considered a motion for judgment in their favor it is **DENIED**, since the supposed undisputed facts have not yet been properly presented to this Court.

### Conclusion

The Court has reconsidered the legal determinations made in its April 11, 2014, decision on motions for summary judgment in light of WhistlePig's arguments regarding applicability and validity of the Act 250 Rules definition of "principally produced" in the 2013 version of the Rules. The Court concludes, however, that under either version of the Rule as well as under the precedent from the former Environmental Board's decision in Scott Farm, WhistlePig's

interpretation of "principally produced" is not supported by the statutory or caselaw precedent and must be rejected. The Court therefore declines to alter or amend its April 11, 2014 decision.

The Court may still consider the JO on appeal, despite any real or alleged changes to WhistlePig's development plans, and therefore the NRB's motion to dismiss is **DENIED**. Finally, Solar Haven Farm's request for a final ruling is **DENIED** for failure to comply with the Vermont Rules of Civil Procedure.

This matter now, at long last, appears ripe for a final evidentiary hearing. We have therefore directed the Acting Court Manager to set this matter for a pre-trial conference with the undersigned; a Notice of Hearing for that conference is attached to this Decision. The parties should prepare to discuss at that conference what legal issues remain for the Court's consideration, how long an evidentiary hearing on those legal issues may take, and when during the remaining months of this calendar year that such a hearing may be scheduled.

Electronically signed on September 2, 2015 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division

8